IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

TYLER MCQUEEN,
    Plaintiff,

v.

CHANTIL SELMAN,
    Defendant.

Case No. 4:25-cv-04044-JEH

## Order

This matter is now before the Court on Defendant Chantil Selman's Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). (Doc. 33). For the reasons stated below, Defendant's Motion is GRANTED.

**I**

Plaintiff, proceeding *pro se*, filed an Amended Complaint under 42 U.S.C. § 1983 alleging Defendant Selman was deliberately indifferent to the treatment of his self-inflicted laceration on January 25, 2024, while he was incarcerated at Hill Correctional Center ("Hill"). (Docs. 9, 11).

On December 15, 2025, Defendant filed a Motion for Summary Judgment. (Doc. 33). The Clerk issued a notice warning Plaintiff that if he failed to respond within 21 days, the Motion would be granted, if appropriate, and the case would be terminated without a trial. (Doc. 34). Plaintiff's response was due on January 5, 2026. To date, Plaintiff has not responded to Defendant's Motion or requested an extension of time. Pursuant to Local Rule 7.1(D)(2)(b)(6), "[a] failure to respond to any numbered fact will be deemed an admission of the fact." *Id*. Accordingly, by failing to file a response, Plaintiff has admitted every numbered fact asserted by Defendant in her Motion.

II

During the relevant period, Plaintiff was an inmate in the custody of the Illinois Department of Corrections and incarcerated at Hill. Defendant was employed as a registered nurse to provide medical care to inmates at Hill. As a nurse, Defendant could not prescribe medications, diagnose patients, or perform certain procedures, such as administering sutures.

At approximately 5:30 a.m. on January 25, 2024, Plaintiff intentionally cut his left wrist with a razor blade. When Defendant was notified at approximately 5:40 a.m., she responded immediately, examined Plaintiff, took his vitals (which were normal), and applied a pressure wrap to the laceration to control the bleeding. As Plaintiff was stable and the bleeding had been controlled, Defendant used her medical judgment to determine that emergency transport to the hospital was not medically required.

Defendant placed Plaintiff on suicide watch, indicated the wound might need stitches, and began attempting to contact the on-call physician for further instructions, as was proper and within her scope as a nurse. In correctional healthcare settings, decisions regarding the management of lacerations and the placement of sutures are made by orders from a supervising practitioner, not a nurse. Between 5:45 a.m. and 7:00 a.m., Defendant attempted to contact the on-call physician multiple times, but the on-call physician was unavailable.

When Nurse Practitioner ("NP") Kasey Kramer arrived at Hill at 7:00 a.m. on January 25, 2024, Defendant informed her about Plaintiff. NP Kramer began providing treatment, and Defendant's involvement with Plaintiff's care ceased. NP Kramer removed the pressure bandage from Plaintiff's arm, examined the laceration, determined that Plaintiff needed sutures at the hospital, and arranged for his transport.

According to Defendant's expert, Meghan Harvey, a Board-Certified Family Nurse Practitioner, the treatment Defendant provided was prompt, proper, medically appropriate, and met the applicable standard of care. Defendant never refused to provide care for Plaintiff or ignored his medical needs. No act or omission by Defendant caused any improper delay in the provision of medical care or caused Plaintiff any undue pain or suffering. Each time Defendant saw Plaintiff or reviewed his chart, she provided care and made medical judgments, which she believed to be appropriate and medically proper under the circumstances. (Docs. 33-1, 33-7).

### III

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

**B**

To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). Deliberate indifference involves a two-part analysis; the plaintiff must show that (1) the medical condition was objectively serious, and (2) the prison official acted with deliberate indifference to his medical needs. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

An objectively serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765-66 (7th Cir. 2002) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). Indications of a serious medical need can include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1373.

To establish the subjective element of a deliberate indifference claim, the plaintiff must show that the prison official acted with a sufficiently culpable state of mind. *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). "[A] plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), as amended (Aug. 25, 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "This is a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)). "[M]ere negligence" or even civil "objective recklessness" simply "is not enough."

*Petties*, 836 F.3d at 728. "This subjective standard requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837) (internal citations omitted).

"Within the universe of deliberate indifference cases is a narrower category where a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for the condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "[T]hese cases are better framed 'not [as] deliberate indifference to a serious medical need,' but as a challenge to 'a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). In such cases, courts defer to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). A disagreement between the prisoner and his medical provider "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)).

IV

Defendant admits that Plaintiff's self-inflicted laceration could be considered a serious medical need. (Doc. 33 at p. 6). Therefore, the Court will focus its analysis on the subjective element of Plaintiff's deliberate indifference claim.

The record shows that Plaintiff suffered a self-inflicted laceration at 5:30 a.m. Within ten minutes, Defendant provided treatment by applying pressure bandaging to the wound, which successfully controlled the bleeding. She also took

Plaintiff's vitals (which were normal), placed him on suicide watch, and charted that he might need stitches.

As medical decisions regarding sutures and diagnoses are outside of Defendant's scope of practice, Defendant attempted to contact the on-call physician for further orders, but the physician was unavailable. During this time, Plaintiff remained under continuous observation in the infirmary, was stable, and the bleeding was under control. Based on her medical judgment, Defendant determined it was proper to wait to discuss the case with a practitioner before taking further action.

When NP Kramer arrived at 7:00 a.m., Defendant quickly informed her about Plaintiff's condition. At this point, Defendant's involvement ceased. NP Kramer examined Plaintiff and determined the laceration needed sutures at the hospital. Within approximately 2.5 hours of the injury, Plaintiff was on the way to the hospital after being properly evaluated by a practitioner.

According to Defendant's expert, Defendant Selman "acted appropriately and within the boundaries of her professional scope by promptly assessing the Plaintiff upon notification of his reported injuries, communicating those concerns to the supervising physician, and delivering attentive and appropriate nursing care . . . ." (Doc. 33-7 at pp. 4-5). Plaintiff did not present any evidence that Defendant's treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [Defendant] did not base the decision on such a judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoted citation omitted); *see also Pyles*, 771 F.3d at 409 (disagreement between the prisoner and his medical provider "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."). An inmate claiming a delay in treatment must offer "verifying medical evidence" that the delay, rather than the inmate's underlying condition,

caused some degree of harm. *Williams v. Liefer*, 491 F.3d 710, 714-15, (7th Cir. 2007); *Langston v. Peters*, 100 F.3d 1235-40 (7th Cir. 1996). Plaintiff presents no verifying medical evidence to support his claim. Based on the undisputed facts, no reasonable jury could find that Defendant was deliberately indifferent to Plaintiff's serious medical needs. Defendant is entitled to summary judgment.

Defendant has also asserted she is entitled to qualified immunity. (Doc. 33 at p. 8). As the Court has found that Defendant's conduct did not constitute cruel and unusual punishment in violation of the Eighth Amendment, it need not address whether Defendant is entitled to qualified immunity. *See Johns v. Tinsley*, No. 16-1106-JES, 2018 WL 10811472, at *5 (C.D. Ill. Mar. 7, 2018) (citing *Van den Bosch v. Raemisch*, 658 F.3d 778, 787 n. 9 (7th Cir. 2011)).

## V

For the reasons stated, *supra*:

(1) Defendant's Motion for Summary Judgment [33] is GRANTED. Defendant Chantil Selman is DISMISSED WITH PREJUDICE. Plaintiff takes nothing. Each side is to bear their own attorney's fees, costs, and expenses. The Clerk is directed to close this case and enter judgment.

(2) Although this case has been dismissed, Plaintiff remains responsible for any remainder of the $350 filing fee. (d/e 2/21/2025).

(3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(4) To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for

appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: February 10, 2026

s/Jonathan E. Hawley
U.S. District Judge